# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# JASPER DIVISION

| | | |
|---|---|---|
| CHERI DENISE MANN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 6:16-cv-00034-JEO |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Plaintiff Cheri Denise Mann brings this action pursuant to 42 U.S.C. §

405(g), seeking review of the final decision of the Acting Commissioner of Social

Security ("Commissioner")[1] denying her application for disability insurance

benefits. (Doc. 1).[2] The case has been assigned to the undersigned United States

Magistrate Judge pursuant to this court's general order of reference. The parties

have consented to the jurisdiction of this court for disposition of the matter. (Doc.

---

[1]Nancy A. Berryhill was named the Acting Commissioner on January 23, 2017. See https://www.ssa.gov/agency/commissioner.html. Under 42 U.S.C. § 405(g), "[a]ny action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office." Accordingly, pursuant to 42 U.S.C. § 405(g) and Rule 25(d) of the Federal Rules of Civil Procedure, the Court has substituted Nancy A. Berryhill for Carolyn W. Colvin in the case caption above and **HEREBY DIRECTS** the clerk to do the same party substitution on CM/ECF.

[2]References herein to "Doc(s). __" are to the document numbers assigned by the Clerk of the Court to the pleadings, motions, and other materials in the court file, as reflected on the docket sheet in the court's Case Management/Electronic Case Files (CM/ECF) system.

12).  *See* 28 U.S.C. § 636(c), Fᴇᴅ. R. Cɪᴠ. P. 73(a).  Upon review of the record and the relevant law, the undersigned finds that the Commissioner's decision is due to be affirmed.

## I.  PROCEDURAL HISTORY

On January 19, 2012, Mann protectively filed an application for a period of disability and disability insurance benefits, alleging disability commencing October 23, 2011.  (R. 131, 185).[3]  Following the initial denial of her application, Mann requested a hearing before an Administrative Law Judge ("ALJ").  (R. 91-92).  The hearing was held on January 27, 2014.  (R. 37-55).  The ALJ issued a decision on May 28, 20144, finding that Mann was not disabled.  (R. 25-32).  The Appeals Council denied her Request for Review on December 10, 2015.  (R. 1-5).  Mann then filed this action for judicial review under 42 U.S.C. § 405(g).  (Doc. 1).

## II.  STANDARD OF REVIEW - GENERALLY

The court's review of the Commissioner's decision is narrowly circumscribed.  The function of the court is to determine whether the Commissioner's decision is supported by substantial evidence and whether proper legal standards were applied.  *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

---

[3]References herein to "R.__" are to the page numbers of the administrative record.

The court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

The court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *See Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits under the Social Security Act, a claimant must show the inability to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or

mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Social Security Act requires a five step analysis. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4). Specifically, the Commissioner must determine in sequence:

> whether the claimant: (1) is unable to engage in substantial gainful activity; (2) has a severe medically determinable physical or mental impairment; (3) has such an impairment that meets or equals a Listing and meets the duration requirements; (4) can perform his past relevant work, in light of his residual functional capacity; and (5) can make an adjustment to other work, in light of his residual functional capacity, age, education, and work experience.

*Evans v. Comm'r of Soc. Sec.*, 551 F. App'x 521, 524 (11th Cir. 2014)[4] (citing 20 C.F.R. § 404.1520(a)(4)). "Once a finding is made that a claimant cannot return to prior work the burden shifts to the [Commissioner] to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted). The Commissioner must further show that such work exists in the national economy in significant numbers. *Id.*; *Evans*, 551 F. App'x at 524.

---

[4]Unpublished opinions of the Eleventh Circuit Court of Appeals are not considered binding precedent; however, they may be cited as persuasive authority. 11th Cir. R. 36-2.

# IV. BACKGROUND

Mann was forty-nine years old at the time of the ALJ's decision. (R. 131). She has a college education and past work as an accounts receivable manager, analyst, and sales agent. (R. 52, 152, 189, 204). Mann alleges disability beginning on October 23, 2011, due to chronic lymphocytic leukemia ("CCL"),[5] hypogammaglobulinemia,[6] and chronic fatigue syndrome. (R. 188).

The ALJ found that Mann had the severe impairment of leukemia but that this impairment did not meet or medically equal the criteria for any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). (R. 27-29). The ALJ determined that the evidence showed that Mann's leukemia was in remission and she was not suffering from symptoms that resulted in debilitating limitations. (R. 32). The ALJ also found that Mann retained the residual functional capacity ("RFC") to perform sedentary work with the following limitations: she can occasionally perform postural and manipulative activities, but

---

[5]"Chronic lymphocytic leukemia ('CLL') is a type of cancer of the blood and bone marrow. It typically progresses more slowly than other types of leukemia. In CLL too many blood stem cells become abnormal lymphocytes and do not become healthy white blood cells." *Snell v. Comm'r Soc. Sec.*, 2013 WL 372032, *1 (S.D. Ohio Jan. 30, 2013).

[6]"Hypogammaglobulinemia refers to a set of clinicolaboratory entities with varied causes and manifestations. The common clinical feature of hypogammaglobulinemia relates to a predisposition toward infections that normally are defended against by antibody responses." Hypogammaglobulinemia. Medscape, http://emedicine.medscape.com/article/136471-overview (last visited July 5, 2017).

she cannot climb ladders, ropes, or scaffolds; she must avoid concentrated exposure to hot/cold or temperature extremes; she must avoid work around dangerous, moving, unguarded machinery and unprotected heights; she can only work around a limited, small number of coworkers; and she must avoid work around the general public. (R. 29). The ALJ then relied on the testimony from the vocational expert (VE) to find that Mann could perform her past relevant work as an analyst, both as she actually performed the job and as it is generally performed in the national economy. (R. 31-32). The ALJ concluded that Mann was not disabled. (R. 32).

## V.  DISCUSSION

Mann asserts two claims of error: (1) the ALJ failed to properly apply the Listings regarding Leukemia and (2) she failed to properly consider the opinions of her treating physicians. (Doc. 9 at 4-13). The Commissioner disagrees and argues that substantial evidence supports the ALJ's findings. (Doc. 12 at 4-16).

### A.    Consideration of the Listings

#### 1.    Generally

To meet a Listing at Step Three of the evaluation process, "a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the

duration requirement." *Wilson*, 284 F.3d at 1224 (citations omitted); *see* 20 C.F.R. § 404.1525. "For a claimant to show that [her] impairment matches a listing, it must meet all of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original).

### 2. Analysis

Mann argues that despite the fact that the ALJ found her leukemia to be a severe impairment, the ALJ "totally ignor[ed] the leukemia listing." (Doc. 9 at 7-8). In support of her claim, Mann asserts:

> Significantly, the leukemia listing indicates that an individual is to be considered "under a disability until at least 24 months from the date of diagnosis or relapse, or at least 12 months from the date of bone marrow or stem cell transplantation, whichever is later." (20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 13.06). It would thus seem from the listings that [Mann] should have at least been considered for a closed period of benefits for 24 months after her alleged onset date....

(*Id*. at 7-8). The Commissioner responds that Mann's conclusory assertion is insufficient to meet her burden. (Doc. 12 at 7).

The analysis must begin with the Listings. The introductory Listing for leukemia provides:

K. How do we evaluate specific cancers?

....

2. Leukemia.

7

…

    c.  Chronic lymphocytic leukemia.

    i.  We require the diagnosis of chronic lymphocytic leukemia (CLL) to be documented by evidence of a chronic lymphocytosis of at least 10,000 cells/mm$^3$ for 3 months or longer, or other acceptable diagnostic techniques consistent with the prevailing state of medical knowledge and clinical practice.

    ii.  We evaluate the complications and residual impairment(s) from CLL under the appropriate listings, such as 13.05A2 or the hematological listings (7.00).

    d.  Elevated white cell count.  In cases of chronic leukemia (either myelogenous or lymphocytic), an elevated white cell count, in itself, is not a factor in determining the severity of the impairment.

*See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 13.00K2.[7]  The specific Listing for

leukemia states:

    A.  Acute leukemia (including T–cell lymphoblastic lymphoma).  Consider under a disability until at least 24 months from the date of diagnosis or relapse, or at least 12 months from the date of bone marrow or stem cell transplantation, whichever is later.  Thereafter, evaluate any residual impairment(s) under the criteria for the affected body system.

---

[7]The court must consider the introductory information in determining the application of a particular listing.  *See* 20 C.F.R. § 404.1525(c)(2) ("The introduction to each body system contains information relevant to the use of the listings in that body system; for example, examples of common impairments in the body system and definitions used in the listings for that body system.  We may also include specific criteria for establishing a diagnosis, confirming the existence of an impairment, or establishing that your impairment(s) satisfies the criteria of a particular listing in the body system.").

OR

B.  Chronic myelogenous leukemia, as described in 1 or 2:

    1.  Accelerated or blast phase (see 13.00K2b). Consider under a disability until at least 24 months from the date of diagnosis or relapse, or at least 12 months from the date of bone marrow or stem cell transplantation, whichever is later. Thereafter, evaluate any residual impairment(s) under the criteria for the affected body system.

    2.  Chronic phase, as described in a or b:

    a.  Consider under a disability until at least 12 months from the date of bone marrow or stem cell transplantation. Thereafter, evaluate any residual impairment(s) under the criteria for the affected body system.

    b.  Progressive disease following initial anticancer therapy.

20 C.F.R. pt. 404, subpt. P, app. 1, § 13.06.

To meet the Listing, Mann must show that her impairment meets all of the specific objective medical criteria listed in the introductory materials to Listing 13.00, as well as the criteria of 13.06.  *See* 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 13.00K2, 13.06; 20 C.F.R. § 404.1525(c)(3) ("We will find that your impairment(s) meets the requirements of a listing when it satisfies all of the criteria of that listing, including any relevant criteria in the introduction, and meets the duration requirement").  Mann asserts that she should have "at least been

considered for a closed period of benefits for 24 months after her alleged onset date" because Listing 13.06 states that "an individual is to be considered 'under a disability until at least 24 months from the date of diagnosis or relapse, or at least 12 months from the date of bone marrow or stem cell transplantation.'" (Doc. 11 at 7-8).

While Mann has been diagnosed with CLL, that is insufficient itself to support a finding that her impairment meets or equals a Listing. *See Morales v. Heckler*, 1986 WL 741, *2 (S.D. N.Y. Jan. 8, 1986) ("[T]he fact that a claimant has been diagnosed as having a listed impairment is insufficient itself to prove disability unless the impairment also has the findings shown in the Listing for that impairment. *See* 20 C.F.R. § 404.1525(d).").  She has the burden of establishing how her impairment meets or exceeds the applicable Listing. *Wilbon v. Comm'r Soc. Sec.*, 181 F. App'x 826, 828 (11th Cir. 2006) ("A claimant who contends that he has an impairment that meets or equals a Listing bears the burden of presenting evidence establishing how his impairment meets or equals that Listing.").  This she has failed to do.  Simply identifying LLC as her impairment is insufficient.  To the extent she cites to Listing 13.06, she has not identified any medical evidence showing that she had bone marrow or stem cell transplantation or a progressive disease following initial anti-cancer therapy, nor has she demonstrated that she

meets the specific criteria in the introductory materials in Listing 13.00.

Additionally, the court believes her reliance on Listing 13.06 is misplaced because

the introductory materials concerning CLL reference evaluation of the impairment

under § 13.05A2 (Indolent lymphoma)[8] and 7.00 (hematological listings)[9] and not

---

[8]Section 13.05A.2 provides, in part:

13.05 Lymphoma (including mycosis fungoides, but excluding T–cell
lymphoblastic lymphoma—13.06). (See 13.00K1 and 13.00K2c.)

A. Non–Hodgkin's lymphoma, as described in 1 or 2:

....

2. Indolent lymphoma (including mycosis fungoides and follicular small cleaved
cell) requiring initiation of more than one (single mode or multimodal) anticancer
treatment regimen within a period of 12 consecutive months. Consider under a
disability from at least the date of initiation of the treatment regimen that failed
within 12 months.

20 C.F.R. pt. 404, subpt. P, app. 1, § 13.05A.2.

[9]Section 7.00 provides, in part:

A . What hematological disorders do we evaluate under these listings?

1. We evaluate non-malignant (non-cancerous) hematological disorders,
such as hemolytic anemias (7.05), disorders of thrombosis and hemostasis (7.08),
and disorders of bone marrow failure (7.10). These disorders disrupt the normal
development and function of white blood cells, red blood cells, platelets, and
clotting-factor proteins (factors).

2. We evaluate malignant (cancerous) hematological disorders, such as
lymphoma, leukemia, and multiple myeloma, under the appropriate listings in
13.00, except for two lymphomas associated with human immunodeficiency virus
(HIV) infection. We evaluate primary central nervous system lymphoma
associated with HIV infection under 14.11B, and primary effusion lymphoma
associated with HIV infection under 14.11C.

under § 13.06.[10]  *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 13.00K.2(c)(ii).  Even if

that section were applicable, Mann has not demonstrated how it leads to the result

she seeks.

To the extent Mann asserts that the ALJ did not adequately articulate the

Step Three finding, that does not necessitate a remand.  The Eleventh Circuit

Court of Appeals has stated that "[t]he ALJ's finding as to whether a claimant

does or does not meet a listed impairment may be implied from the record" and

that, while the ALJ must consider the Listings, the ALJ is not required to

"mechanically recite the evidence leading to h[er] determination."  *Prince v.*

*Comm'r Soc. Sec.*, 551 F. App'x 967, 969 (11th Cir. 2014) (citing *Hutchinson v.*

*Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986)).  In this instance, the ALJ did not

specifically discuss the leukemia Listings, but she clearly considered the evidence

concerning that impairment.  (*See* R. 27 ("The claimant has the following severe

impairment: leukemia (20 CFR 404.1520(c)).") and R. 29 ("The claimant alleges

disability due to leukemia.").  Her decision includes an extensive discussion

concerning Mann's LCC diagnosis, her symptoms, and their impact on her ability

---

20 C.F.R. pt. 404, subpt. P, app. 1, § 7.00.

[10]Section 13.00K2(c)(ii) lists these two sections as examples of "appropriate listings."
Mann has not identified any other section that is applicable in her situation besides § 13.06.  (*See*
Doc. 9 at 7-8).

to function.  (R. 29-30).  Under the circumstances, the court finds that the ALJ

impliedly rejected any contention that Mann's condition met or exceeded the

Listing requirements.  *See Keane ex rel. Parcelles v. Comm'r of Soc. Sec.*, 205 F.

App'x 748, 751 (11th Cir. 2006) (stating "there may be an implied finding that a

claimant does not meet a listing") (citing *Bowen*, 787 F.2d at 1463).

### B.    The ALJ's Consideration of the Evidence from Mann's Treating Physicians

#### 1.    The claims

Mann asserts that the ALJ should have given greater weight to the opinions

from Dr. Keith Morrow, her treating physician, and Mr. Alan Bragwell,[11] her

mental counselor.[12]  (Doc. 9 at 8-13).  She argues that "[i]f the ALJ had given Dr.

Morrow and Mr. Bragwell's opinions appropriate weight, the ALJ would have

found [Mann] disabled based upon [her] diagnosed CLL, the side effects of

therapy including chronic fatigue, and her CLL related depression."  (*Id*. at 9).

The Commissioner responds that "the ALJ properly evaluated the medical

evidence of record and determined that [Mann] retained the RFC to perform a

---

[11]Bragwell is referred to in the record as "Mr. Bragwell," "Alan Bragwell, Ph.D.," "Dr. Bradwell," "Dr. Blackwell," and "Alan Bragwell, LPC-S"  (R. 28, 397, 399, 404-06 ).  The record does not include his academic credentials.  For convenience, the court will refer to him as Mr. Bragwell in this opinion.

[12]Mann refers to Mr. Bragwell as her "therapist."  (Doc. 9 at 9).

range of sedentary work...." (Doc. 12 at 8 (citing R. 29)). Additionally, the Commissioner asserts that "[s]ubstantial evidence supports the ALJ's RFC finding, as well as her decisions regarding the weight to accord evidence from Dr. Morrow and Mr. Bragwell." (*Id*. at 8-9).

Mann also argues that the ALJ failed to give adequate weight to two specific documents from her treating physicians. The first is a completed questionnaire regarding her condition from Dr. Marrow dated January 23, 2014. (R. 402). The second is a Mental Source Opinion Form from Mr. Bragwell completed on the same date as the questionnaire. (R. 398-99). Dr. Morrow stated that Mann had a history of CLL, chronic fatigue, chronic migraines, and depression. He opined that Mann was not able to engage in full time employment and that he (Morrow) expected her condition to continue for twelve months. (R. 402). Mr. Bragwell opined that Mann had marked limitations in her ability to respond appropriately to supervisors, co-workers, and members of the general public; deal with changes in a routine work setting; respond to customary work pressures; and maintain social functioning, activities of daily living, and attention, concentration, and pace for two hour periods. (R. 398-99).

## 2. Standard of review

In assessing the weight to be given an acceptable medical source such as a

physician, an ALJ is to consider numerous factors, including whether the physician examined the individual, whether the physician treated the individual, the evidence the physician presents to support his or her opinion, whether the physician's opinion is consistent with the record as a whole, and the physician's specialty. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c). A treating physician's opinion generally is entitled to more weight, and an ALJ must give good reasons for discounting a treating physician's opinion. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). This is particularly true when the treatment "has been over a considerable period of time." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). "However, the nature of the relationship between the doctor and the claimant is only one factor used to determine the weight given to a medical opinion." *Chambers v. Astrue*, No. 1:11-cv-02412-TWT-RGV, 2013 WL 486307, at *27 (N.D. Ga. Jan. 11, 2013) (citing 20 C.F.R. § 404.1527). An ALJ may discount a physician's opinion, including a treating physician's opinion, when the opinion is conclusory, the physician fails to provide objective medical evidence to support his or her opinion, the opinion is inconsistent with the record as a whole, or the evidence otherwise supports a contrary finding. *See* 20 C.F.R. §§ 404.1527(c)(3), (c)(4); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159-60 (11th Cir.

2004); *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991).

### 3.  Analysis

#### a.  Dr. Morrow

Mann argues the error in the ALJ's decision is highlighted by the fact that the ALJ incorrectly referred to Dr. Morrow's opinion as coming from "Dr. Lamar Glass"[13] and by a review of the "entirety of the record" which supports Dr. Morrow's conclusions.  (Doc. 9 at 10).

While evaluating Dr. Morrow's opinion that Mann was not able to engage in full time employment and that he (Morrow) expected her condition to continue for twelve months (R. 402), the ALJ correctly found that Dr. Morrow's opinion regarding work was not a "medical opinion," but rather was an opinion on an issue reserved for the Commissioner, and it was not supported by the record.  (R. 31).

The evidence shows Mann's February 2011 diagnosis of CLL with associated hypogammaglobulinemia.  (R. 31).  Manifestations of her condition included pneumonia, strep throat, low grade fever, night sweats, and fatigue.  (R. 286-89).  She commenced gamma globulin treatment in May 2011.[14]  (R. 284-85).

---

[13]Lamar Glass is Mann's former representative.  (*See* R. 402).

[14]These treatments are also referenced in the record as Intravenous immunoglobulin ("IVIG"), which  is a blood product prepared from the serum of between 1,000 and 15,000

With medical concurrence, Mann decided to not begin chemotherapy in view of the fact that she was in the early stage of the disease.  (*Id.*)  She tolerated the treatment well, but experienced typical side effects such as "mild flu-like symptoms lasting 1-2 days," fever, chills, headaches, nausea, sinus drainage, and general fatigue.[15]  (R. 256, 272, 274, 276, 278, 280, 282, 349).

In December 2011, Mann inquired about taking Rituxan[16] "in hopes of improving her profound fatigue."  (R. 275).  She started a course of treatment in January 2012.  (R. 272-73).  Mann initially reported no improvement with her fatigue.  (R. 305, 339).  Her last cycle of Rituxan ended June 2013.  (R. 341-42, 349).

By May 2013, Mann reported having sinus congestion, "but overall she fe[lt] pretty good."  (R. 359).  During this visit, she inquired about returning to work.  Dr. Kenneth Wurtz stated that while Mann was clinically doing well, she

---

donors per batch.  It is the treatment of choice for patients with antibody deficiencies.  S. Jolles, WAC Sewell, & SA Misbah, *Clinical Uses of Intravenous Immunoglobuin*, The Journal of Translation Immunology (Oct. 2005) (https://www.ncbi.nlm.nih.gov/pmc/articles/PMC1809480/ (last visited July 7, 2017).

[15] "It is well-established that fatigue can be a symptom of chronic lymphocytic leukemia. *See* MEDLINEplus Health Information, Medical Encyclopedia: *Chronic Lymphocytic Leukemia*, available at http:// www.nlm.nih.gov/medlineplus/chroniclymphocyticleukemia.html (a service of the U.S. National Library of Medicine and the National Institutes of Health)."  *McMillin v. Astrue*, 2013 WL 6816374, * 14 (W.D. La. Dec. 19, 2013).

[16]Rituxan is a monoclonal antibody for treatment of CLL.  http://chemocare.com/ chemotherapy/drug-info/rituxan.aspx (last visited July 7, 2017).

might want to see how her gamma globulin was and how she felt after remaining off Rituxan treatment. (R. 359-60). Mann was told it could take a year to see how she was doing on the gamma globulin after she completed the Rituxan. (R. 360). Her June 2013 medical visit with Dr. Dmitriy Zak was unremarkable. (R. 361). On August 8, 2013, Dr. Michael Garcia noted, "Work seemed to increase the frequency of her infections, and she is now on disability due to her recurrent infections." (R. 373). On November 8, 2013, Dr. Garcia noted that Mann "appears clinically stable, without need for additional systemic treatment for her leukemia." (R. 371).

The court finds the ALJ properly determined that portions of Dr. Morrow's letter do not constitute a "medical opinion" within the meaning of the regulations. (R. 31). For instance, the ALJ noted that Dr. Morrow's opinion that Mann is unable to work is "not [a] medical opinion . . . but [is], instead, [an] opinion[] on [an] issue[] reserved for the Commissioner because [it is an] administrative finding[] that [is] dispositive of a case." 20 C.F.R. § 404.1527(d); *see* SSR 96-5p, 1996 WL 374183, at *2; *see also Heppell-Libsansky v. Comm'r of Soc. Sec.*, 170 F. App'x 693, 697 (11th Cir. 2006) (stating that "opinions on some issues are not medical opinions because they are dispositive administrative findings reserved to the Commissioner, including the ultimate determination of whether a claimant is

disabled"). Opinions on issues reserved for the Commissioner, even when offered by a treating source, "are never entitled to controlling weight or given special significance." SSR 96-5p, 1996 WL 374183, at *2. "Giving controlling weight to such opinions would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled." *Id.*

> However, opinions from any medical source on issues reserved to the Commissioner must never be ignored. The adjudicator is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner. If the case record contains an opinion from a medical source on an issue reserved to the Commissioner, the adjudicator must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record.

SSR 96-5p, 1996 WL 374183, at *3.

Here, the ALJ did what she was required to do. She considered Dr. Morrow's opinions and found they were due little weight. (R. 31). The court finds that substantial evidence supports the ALJ's decision. By way of example, the medical evidence shows that, while Mann was diagnosed with CCL, her primary treatment was IVIG, which Dr. Hughes described as "prophylactic," due to her history of recurrent infections. (R. 272, 277, 285). Mann also received and

completed four-week courses of chemotherapy every six months due to her fatigue, and Dr. Hughes reported that her symptoms improved by March 2012, following her treatment. (R. 305). Finally, Mann's cancer was in remission by about May 2013. (R. 31, 41, 359, 374 ("CBC/diff done last week shows a normal white count")). Thus, the court finds the ALJ properly evaluated the opinions from Dr. Morrow.

### b. Mr. Bragwell

As noted above, Mr. Bragwell opined that Mann had marked limitations in various aspects of her ability to work and maintain social functioning; activities of daily living; and attention, concentration, and pace for two hour periods. (R. 398-99). Because Mr. Bragwell is a licensed professional counselor, the regulations are clear that he is not an "acceptable medical source." (*See* R. 399). *See* 20 C.F.R. § 404.1513(a). As a non-acceptable source, Mr. Bragwell cannot render a "medical opinion" as defined by the regulations. *See* 20 C.F.R. § 404.1527(a)(2). Instead, Mr. Bragwell is an "other source," and the ALJ may consider the evidence from him. *See* 20 C.F.R. § 404.1513(d). The "Medical Source Opinion Form (Mental)," dated January 23, 2014, completed by Mr. Bragwell, constitutes other evidence the ALJ may consider.

The record is clear that the ALJ explicitly considered the evidence from Mr.

Bragwell and found that it was contrary to the other evidence of record, including Mr. Bragwell's own treatment notes, and assigned it little weight. (R. 28). Specifically, the ALJ considered that the only treatment notes from Mr. Bragwell, dated October 2013 and January 2014, showed that Mann responded well to medication management and that her depression symptoms had decreased. (R. 405-06). In addition, the ALJ noted that on April 18, 2012, Dr. James B. Lindsey assigned Mann a GAF score of 68, indicating only mild symptoms.[17] (R. 28, 317). *See* Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders, 32-34 (4th ed. Text Revision 2000) (DSM-IV). Thus, the ALJ properly assigned little weight to the opinions from Mr. Bragwell.

---

[17]In the prognosis section of his evaluation, Dr. Lindsey stated:

[Mann] presents with medical problems as her primary interference with her ability to work. The results of the current evaluations suggest that [Mann] is currently endorsing symptoms consistent with depression not otherwise specified. [Mann's] mental health condition could improve in the next 6-12 months if she was able to secure outpatient counseling for her mental health conditions. At the time of the evaluation, [Mann's] concentration and attention appear to be average. Memory is intact. Fund of information is average. Abstraction is average. Thought process is clear. Thought content is mildly depressed. Judgment is average. Insight into her condition is average. She does not appear to be impaired related to her intellectual functioning related to positions she has held in the past. She is not likely to have some trouble relating to co-workers and supervisors. She is capable of independent living. The results of the current evaluation suggest that [Mann's] current mental health functioning is causing mild impairment to her employability. Per [Mann's] report, her physical conditions are causing more impairment than her mental conditions.

(R. 317).

The determination of the ALJ is further supported by the opinions of Dr. Richard Whitney and Dr. Melissa F. Jackson, the sate agency medical consultants, from March and April 2012, respectively.  (R. 31-32, 60-64).  Dr. Whitney opined that Mann could lift and carry ten pounds frequently and twenty pounds occasionally; could sit and stand/walk for six hours each in an eight-hour workday; could occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; could never climb ladders, ropes, and scaffolds; had no visual, communicative, or manipulative limitations; should avoid concentrated exposure to extreme heat and cold; should avoid all exposure to hazards such as unprotected heights; and had no other environmental limitations.  (R. 62-64).  Dr. Jackson opined that Mann had mild limitations in her activities of daily living, social functioning, and ability to maintain concentration, persistence, and pace and that she had no repeated episodes of decompensation.  (R. 61).  Dr. Jackson also noted Mann "appears to be responding well to medication and is expected to continue to respond well over the next 6 to 12 months."  (*Id*.)

Finally, additional evidence supporting the ALJ's conclusions is found in the opinion from Dr. Lindsey, the consultative mental health examiner.  (R. 28). During her interview, Mann told Dr. Lindsey that her daily activities included cleaning her house, doing laundry, gardening, lying down, vacuuming, and

preparing three meals; that she was able to drive, manage her finances, and help care for her husband; and that her hobbies included reading, being outside, and crafting. (R. 317). After a mental status examination, Dr. Lindsey opined that Mann's memory was intact; her concentration and attention were average; her fund of information was average; her thought process was clear and her thought content was mildly depressed; her judgment and insight were average; her intellectual functioning did not seem to be impaired; she was capable of independent living; she was not likely to have trouble relating to coworkers and supervisors; and she would have some mild impairment related to employability (R. 317).

## VI. CONCLUSION

For the reasons set forth above, the undersigned concludes that the Commissioner's decision is due to be affirmed. An appropriate order will be entered separately.

**DONE,** this the 13th day of July, 2017.

_____
**JOHN E. OTT**
Chief United States Magistrate Judge